Mr. Justice Davis
delivered the opinion of the court:
These claimants cannot recover, on the ground that the injuries to their vessel were occasioned by the tortious act of the quartermaster at Brazos in compelling their master, against his better judgment, to proceed' to sea; nor would their condition be improved if the vessel had been actually impréssed into the service of the United States, for in neither case would the Court of Claims have jurisdiction. Reed v. The United States, (11 Wallace, 591;) The same v. Kimball, (13 id., 636.)
Congress has wisely reserved to itself the right to give or *22 withhold relief where the claim is founded on the wrongful proceedings of an officer of the Government.
The case, therefore, rests wholly on the contract of affreightment, and the inquiry is, which of the parties to it must bear the loss caused by the stranding of the claimants’ vessel on the bar at the -mouth of the harbor of Brazos. The stipulations in the contract applicable to this subject leave no room for doubt how the question should be answered. The United States, being in a state of war, found it necessary to- hire the injured vessel for the purpose of transporting troops and munitions of war to different ports and places, and entered into a contract with her owners to carry this purpose into effect. The vessel was to be officered and manned by the owners, who agreed at all times to keep her in repair and fit for the service in which she was engaged. In no sense were the United States the owners of the vessel, for they had nothing to do with her management, and only reserved to themselves the right to say how she should be loaded and where she should go. In the condition of things then existing it became necessary to make provision for two classes of perils. This was done; the United States assuming the war risk, while the owners of the boat agreed to bear the marine risk. If, therefore, the stranding of the boat in going over the bar was owing to a peril of the sea, her owners, and not the Government, must bear the loss. That the high wind and low stage of water were the efficient agents in producing this disaster are too plain for controversy. They were the proximate cause of it, and in obedience to the rule “ causa próxima non remota spectatur ” we cannot proceed further in order to find out whether the fact of war did not create the exigency which compelled the employment of the vessel. If it did, it was known to the owners when the charter-party was formed, who, with this knowledge, became their own insurers against the usual sea risks, and must abide the consequences of their stipulation.
There is a certain degree of hardship in this case growing-out of the peremptory order of the quartermaster to proceed to sea, but this is outside of the contract, and, if worthy of being considered at all, must be addressed to another department of the Government.
The judgment of the Court of Claims is affirmed.